IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

BALINT KOCSIS,              ) Civ. No. 12-00423 ACK BMK
                                 )
        Plaintiff,     )
                                 )
   v.                   )
                                 )
DELTA AIR LINES, INC.,   )
                                 )
        Defendant.     )
                                 )
_____ )

### ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S RULE 56(d) REQUEST FOR FURTHER DISCOVERY

For the following reasons, the Court hereby GRANTS IN PART Delta's Motion for Summary Judgment. The Court GRANTS summary judgment to Delta on Mr. Kocsis's claims based on theories of disparate impact or "pattern-or-practice." The Court also, however, GRANTS Mr. Kocsis's request for further discovery as to his claims based on a theory of disparate treatment. As to those claims, Delta's Motion is DEEMED WITHDRAWN, and the parties shall proceed with discovery as set forth below.

### PROCEDURAL BACKGROUND

Plaintiff Balint Kocsis claims that Defendant Delta Air Lines unlawfully discriminated against him because of his age.

Mr. Kocsis, who is appearing pro se, filed his Complaint in this Court on July 27, 2012. (Dkt. No. 1.) Delta filed an Answer on October 9, 2012. (Dkt. No. 7.) On June 13, 2013, Delta filed the instant Motion for Summary Judgment (Dkt. No. 28), which was supported by a concise statement of facts and

various declarations and exhibits (Dkt. No. 29 ("Delta CSF")).
Mr. Koscis initially filed an opposition on July 2, 2013 (Dkt.
No. 34), but then filed an Amended Opposition on July 8, 2013
(Dkt. No. 36 ("Opp.")), which was supported by a concise
statement of facts and various declarations and exhibits (Dkt.
No. 37 ("Kocsis CSF")). The Amended Opposition was timely, and
the Court will consider it. Delta filed a Reply in support of its
Motion on July 15, 2013. (Dkt. No. 38.) A hearing on Delta's
Motion was held on July 29, 2013. (Dkt. No. 42.)

## FACTUAL BACKGROUND[1/]

Mr. Kocsis was hired by Northwest Airlines as a flight
attendant in 1989. (Delta CSF ¶ 2.) In 2004, he was promoted to
the position of "Purser," the most senior flight attendant on a
given flight. (Id. ¶ 10.) In 2008, Northwest and Delta merged,
and Mr. Kocsis became an employee of Delta, still as a Purser.
(Id. ¶¶ 3, 10; Kocsis CSF ¶ 3.)

When customers on a Delta flight buy duty-free items,
the flight attendants collect payment from the customers and
place the cash and credit card receipts in sealed, tamper-proof
envelopes. (Delta CSF ¶ 5.) The flight attendants bring their
individual envelopes to the Purser, who places them in a Master
Deposit Envelope ("MDE"), seals the MDE, and deposits it at a
"drop safe" upon landing. (Id. ¶¶ 5-7.)

_____

[1/] The facts as recited in this order are for the purpose of
disposing of the current motion and are not to be construed as
findings of fact that the parties may rely on in future
proceedings.

Delta's duty-free program is handled by a Miami-based company called DFASS. (Id. ¶ 4.) On August 30, 2010, DFASS reported to Junichi Takao, Mr. Kocsis's supervisor, that some MDEs were missing that Mr. Kocsis should have deposited at Narita International Airport in Tokyo. (Id. ¶ 17; Takao Decl. ¶ 8.) Later in November, Mr. Takao received a forwarded email originating from DFASS, which stated that more than twenty MDEs for which Mr. Kocsis was responsible - totaling more than $8,000 - had not been deposited over the preceding few months. (Takao Decl. ¶¶ 14-16.) Mr. Takao contacted Mr. Kocsis, who responded that he had made all of the deposits correctly, and that there could be a problem at Narita. (Id. ¶¶ 17-18; see Kocsis CSF ¶ 19.) In fact, the list of missing deposits included five flights on which Mr. Kocsis was not even working. (Kocsis Decl. ¶ 3.) Given Mr. Kocsis's explanation for the missing envelopes, Delta developed a "dual audit procedure" whereby a DFASS employee and a Delta employee would check the deposit safe at Narita together. (Bell Decl. ¶¶ 26-27.)

The dual audits performed in January 2011 found that three MDEs attributable to Mr. Kocsis were missing from the Narita deposit safe. (Fukuoka Decl. ¶¶ 9-10.) Only MDEs attributable to Mr. Kocsis were missing. (Id. ¶ 11.) One missing MDE was numbered 463051, and the other two were numbered 462455. (Id. ¶ 10.)[2/]

---

[2/] The declaration of Kiyomi Fukuoka, the Delta employee who
(continued...)

When Mr. Takao told Mr. Kocsis in an email that "January deposits were not received," Mr. Kocsis responded that he had deposited all his January 2011 MDEs at either Narita or Honolulu Airports. (Kocsis Decl. ¶ 6; see Kocsis CSF Ex. O.) He told Mr. Takao that he could provide copies of all his January receipts. (Kocsis CSF Ex. O.) Mr. Takao forwarded this statement to his direct supervisor, Bobbie Bell. (Delta CSF Ex. I.)

In February 2011, Ms. Bell communicated with Debbie Bunch, a Delta in-flight services employee at Honolulu, and another employee there; they told Ms. Bell that they did not receive Mr. Kocsis's missing MDEs. (Bell Decl. ¶¶ 36-37.)[3/] On February 25, 2011, Ms. Bell and Mr. Takao jointly drafted a memorandum recommending that Delta fire Mr. Kocsis. (Takao Decl. ¶ 25.)

On March 7, 2011, Mr. Takao met Mr. Kocsis upon returning from a trip and placed him on unpaid leave. (Kocsis Decl. ¶ 7.) Mr. Kocsis states that during this meeting Mr. Takao told him that another, similarly-aged[4/] Purser, Kevin Griffin,

_____

(...continued)
conducted the "dual audit," appears to contain a typographic error, incorrectly identifying one of the MDEs numbered 462455 as "62455." (Fukuoka Decl. ¶ 10.) The correct numbering is given elsewhere in the declaration. (See id. ¶ 11 & Ex. H.)

[3/] At the hearing on Delta's Motion, Mr. Kocsis asserted that Ms. Bell had testified during his grievance appeal hearing that she did not speak to Ms. Bunch until March 2011. Mr. Kocsis has offered no admissible evidence to support this assertion, however.

[4/] In his written filings, Mr. Kocsis confusingly referred
(continued...)

had previously been caught stealing Delta property, and that Delta's management had been angry when Ms. Bell and Mr. Takao decided not to fire Mr. Griffin. (Id.)

In March 2011, after Mr. Kocsis was placed on leave, Ms. Bell once again checked the Narita and Honolulu deposit logs and communicated with Ms. Bunch and the other Delta employee in Honolulu, who again told her that they had not received the missing MDEs from Mr. Kocsis. (Bell Decl. ¶¶ 45-50.)

On March 20, 2011, and again on March 22, 2011, Mr. Kocsis sent an email to Ms. Bell, Mr. Takao, and others, which detailed extensive problems he saw in Delta's MDE deposit system and included a list of his January 2011 deposits. (Kocsis CSF Ex. K.) The list includes MDEs # 463051 and # 462455 and indicates that he deposited these MDEs in Honolulu and received signed receipts. (Id.) It also notes that MDE # 462455 was deposited inside another MDE. (Id.) Ms. Bell replied on March 23, 2011, stating that Delta did not take Mr. Kocsis's status lightly and was reviewing the MDEs and logsheets, and that "[w]e have also reviewed the HNL logsheets and do not find the funds received at this location either." (Id.)

On around March 25, 2011, Delta approved Ms. Bell and Mr. Takao's recommendation to fire Mr. Kocsis. (Bell Decl. ¶ 51.)

_____

(...continued)
to Mr. Griffin as "similarly-situated," a legal term with a specific, different meaning in the context of employment discrimination claims. Mr. Kocsis clarified his argument at the hearing on Delta's Motion.

Ms. Bell and Mr. Takao fired Mr. Kocsis on March 30, 2011. (Delta CSF ¶ 28.) When Mr. Kocsis asked why he was being fired, he was handed a sheet of paper listing the three missing MDEs from January 2011. (Kocsis Decl. ¶ 8.)[5/] Mr. Kocsis was then 52 years old. (See Delta CSF ¶ 3.)

Mr. Kocsis strongly disputed, and continues strongly to dispute, whether any MDEs in his charge ever went missing. He states that he was never given the chance before he was fired to present full explanations to Mr. Takao or Ms. Bell, and that both supervisors refused to look at his receipts for the supposedly missing MDEs from January 2011. (Kocsis Decl. ¶¶ 7-8.) In his declaration supporting his Opposition, he explains as follows regarding each envelope:

First, Mr. Kocsis agrees that he failed to deposit MDE # 463051 in Narita, but explains that he inadvertently forgot to do so. (Id. ¶ 4.) He realized his mistake during his return flight to Honolulu. (Id.) When he reached Honolulu, he deposited the MDE with Debbie Bunch, and Ms. Bunch signed a receipt for him. (Id.; see Kocsis CSF Ex. J at 2 (receipt # 463051 (signed)).)

---

[5/] Ms. Bell and Mr. Takao's memorandum recommending termination, however, discussed the earlier allegedly missing MDEs as well as the three January deposits, and both managers state that they decided to fire Mr. Kocsis in part because of his "history of missing MDEs." (Delta CSF Ex. K; Bell Decl. ¶ 57; Takao Decl. ¶ 34.) Mr. Kocsis's termination letter merely states generally "you did not deposit company funds from your Duty Free sales." (Delta CSF Ex. P.)

Second, MDE # 462455 was a single envelope provided for a round trip (two flights) from Nagoya to Guam and back again on January 23, 2011. (<u>Id.</u> ¶ 5.) Mr. Kocsis had already sealed the MDE for the round trip just before landing in Nagoya when one of the flight attendants realized she had forgotten to hand in some of the cash and credit card receipts she had collected. (<u>Id.</u>) Mr. Kocsis tore open the MDE so that the attendant could add her deposit. (<u>Id.</u>) Mr. Kocsis kept the torn MDE, intending to find an extra envelope on a later flight to put the torn one into. (<u>Id.</u>) He did not find an extra envelope, but taped up the torn MDE. (<u>Id.</u>) On January 28, 2011, he entered MDE # 462455 onto the deposit log in Narita, but then changed his mind about depositing it and again decided to see if he could obtain an extra envelope on his return flight to Honolulu. (<u>Id.</u>) He again could not find an extra envelope, so he placed the torn-and-taped MDE inside the MDE for his return flight to Honolulu (MDE # 462209) and deposited both MDEs at Honolulu, where he again received receipts. (<u>Id.</u>; <u>see</u> Kocsis CSF Ex. J. at 3-4 (receipts # 462455 (notations unclear) and # 462209 (initialed)).)

Mr. Kocsis appealed his termination through Delta's internal grievance process, but the decision was upheld. (Delta CSF ¶¶ 29, 32.) During the appeal proceeding, Ms. Bell investigated the receipt that Mr. Kocsis presented for MDE # 462209. (Bell Decl. ¶¶ 59-63.) She found that MDE # 462209 had been deposited, but did not find the contents of MDE # 462455 inside it. (<u>Id.</u> ¶¶ 62-63.) She concluded once more that

Mr. Kocsis had not deposited MDE # 462455 at Honolulu. (<u>Id.</u> ¶ 63.)

During the grievance proceedings and appeals, Mr. Kocsis did not claim that Delta had discriminated against him because of his age. (Delta CSF ¶ 33.) Mr. Kocsis testified during his deposition that after he was fired, however, he spoke to a Delta Purser, Muriel Baker, who told him that she had complained to Delta's corporate security officer, John O'Dwyer, at least three times about a flight attendant called Henry Kashfi who she had caught stealing duty-free deposits, but that Mr. Kashfi had not been fired. (<u>See</u> Kocsis CSF, Ex. C ("Kocsis Dep.") at 278:4-282:3.) Mr. Kocsis believes based on an entry he saw on the website Facebook that Mr. Kashfi is eleven years younger than him. (<u>Id.</u> at 278:14-18.) Mr. Kocsis also testified at his deposition that he heard from New York-based flight attendants that it was "common knowledge" that Mr. Kashfi had been stealing duty-free deposits for years. (<u>Id.</u> at 283:17-285:16.)

Mr. Kocsis filed an EEOC charge alleging age discrimination in September 2011. (Delta CSF ¶ 33.) The EEOC charge was dismissed on March 22, 2012. (<u>Id.</u> ¶ 35.)

## STANDARD

### I.   Motion for Summary Judgment

A party may move for summary judgment on any claim or defense - or part of a claim or defense - under Federal Rule of Civil Procedure ("Rule") 56. Summary judgment "should be granted 'if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law.'" <u>Maxwell v. Cnty. of San Diego</u>, 697 F.3d 941, 947 (9th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). Under Rule 56, a "party asserting that a fact cannot be or is genuinely disputed must support the assertion," either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The substantive law determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." <u>Nat'l Ass'n of Optometrists & Opticians v. Harris</u>, 682 F.3d 1144, 1147 (9th Cir. 2012). "The mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (citation omitted).

A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." <u>United States v. Arango</u>, 670 F.3d 988, 992 (9th Cir. 2012) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986)). Conversely, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving

party, there is no genuine issue for trial." Scott, 550 U.S. at 380.

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. Avalos v. Baca, 596 F.3d 583, 587 (9th Cir. 2010). If the moving party satisfies its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Sluimer v. Verity, Inc., 606 F.3d 584, 587 (9th Cir. 2010). The nonmoving party must present evidence of a "genuine issue for trial," Fed. R. Civ. P. 56(e), that is "significantly probative or more than merely colorable," LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1137 (9th Cir. 2009) (citation omitted). Summary judgment will be granted against a party who fails to demonstrate facts sufficient to establish "an element essential to that party's case and on which that party will bear the burden of proof at trial." Parth v. Pomona Valley Hosp. Med. Ctr., 630 F.3d 794, 798-99 (9th Cir. 2010) (citation omitted).

When evaluating a motion for summary judgment, the court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Scott, 550 U.S. at 378. The court may not, however, weigh conflicting evidence or assess credibility. In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008).[6] Accordingly, if "reasonable

---

[6] Nonetheless, a "conclusory, self-serving affidavit" that lacks detailed facts and supporting evidence may not create a
(continued...)

minds could differ as to the import of the evidence," summary judgment will be denied. <u>Anderson</u>, 477 U.S. at 250-51.

## II.  <u>Special Considerations for Pro Se Litigants</u>

The Ninth Circuit has repeatedly cautioned that pro se litigants must be treated with liberality. <u>See, e.g.</u>, <u>Waters v. Young</u>, 100 F.3d 1437, 1441 (9th Cir. 1996) ("As a general matter, this court has long sought to ensure that pro se litigants do not unwittingly fall victim to procedural requirements that they may, with some assistance from the court, be able to satisfy.") Thus, when considering a motion for summary judgment against a pro se plaintiff, the Court must consider as evidence the pro se party's contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where the pro se party attested under penalty of perjury that the contents of the motions or pleadings are true and correct. <u>Jones v. Blanas</u>, 393 F.3d 918, 923 (9th Cir. 2004).

Nonetheless, pro se litigants must follow the same rules of procedure that govern other litigants. <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987). "Ignorance of court rules does not constitute excusable neglect, even if the litigant appears pro se." <u>Swimmer v. IRS</u>, 811 F.2d 1343, 1345 (9th Cir. 1987). The

---

[6]/ (...continued)
genuine issue of material fact. <u>F.T.C. v. Neovi, Inc.</u>, 604 F.3d 1150, 1159 (9th Cir. 2010). "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." <u>Yeager v. Bowlin</u>, 693 F.3d 1076, 1080 (9th Cir. 2012).

court is not required to provide a non-prisoner pro se litigant with notice of the summary judgment rules. Bias v. Moynihan, 508 F.3d 1212, 1223 (9th Cir. 2007).

## DISCUSSION

### I.   Federal Claims Under the ADEA

The ADEA makes it unlawful for an employer to discriminate "because of [an] individual's age." 29 U.S.C. § 623(a)(1). The prohibition is "limited to individuals who are at least 40 years of age." Id. § 631(a).

An ADEA age discrimination claim may be supported by either direct or circumstantial evidence. Sheppard v. David Evans & Assocs., 694 F.3d 1045, 1049 (9th Cir. 2012). Direct evidence is "evidence of conduct or statements by [decision-makers] that may be viewed as directly reflecting the alleged discriminatory attitude." Enlow v. Salem-Keizer Yellow Cab Co., 389 F.3d 802, 812 (9th Cir. 2004). Here, Mr. Kocsis does not present any direct evidence of age discrimination. Rather, he argues that age discrimination can be inferred from the way that Delta allegedly treated another employee, who was younger than Mr. Kocsis but otherwise similarly situated.

When considering whether to grant summary judgment on an ADEA claim that presents only circumstantial evidence of age discrimination, district courts in this Circuit use the burden-shifting framework laid out by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Shelley v. Geren, 666 F.3d 599, 607-08 (9th Cir. 2012). The plaintiff must

first present a prima facie case of age discrimination; if he
does so, the burden of production shifts to the defendant to
articulate a legitimate nondiscriminatory reason for its
employment decision. See Coleman v. Quaker Oats Co., 232 F.3d
1217, 1280-81 (9th Cir. 2000). If the employer successfully
articulates its legitimate reason, the burden of production
shifts back to the plaintiff, who must demonstrate that the
employer's alleged reason for the adverse employment decision is
a pretext for another motive which is discriminatory. Id. Despite
the shifting burden of production, the ultimate burden of proof
remains always on the plaintiff to show that the employer
discriminated against him on the basis of age. Id.; Shelley, 666
F.3d at 608.

In this Circuit, a plaintiff may bring ADEA
discrimination claims under two theories: "disparate treatment"
or "disparate impact." Sheppard, 694 F.3d at 1049 n.1. The
McDonnell Douglas burden-shifting framework described above
applies to both types of claim. See, e.g., Shelley, 666 F.3d at
608 (disparate treatment claim); Rose v. Wells Fargo. & Co., 902
F.2d 1417, 1424 (9th Cir. 1990) (disparate impact claim). Here,
Mr. Kocsis brings claims under both theories. The Court will
examine each theory separately.

### A.   Disparate Treatment

A disparate treatment claim under the ADEA alleges that
"the employer simply treats some people less favorably than
others because of their [age]." Enlow, 389 F.2d at 811.

To establish a prima facie claim under the ADEA that he was fired because of his age, the plaintiff must produce evidence showing that he was: (1) at least 40 years old; (2) performing his job satisfactorily; (3) discharged; and (4) either replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of discrimination. Schechner v. KPIX-TV, 686 F.3d 1018, 1023 (9th Cir. 2012) (citation omitted). To survive summary judgment, the plaintiff must present admissible evidence as to all four elements of the prima facie claim. E.g., Shelley, 666 F.3d at 608.

It is undisputed that Mr. Kocsis was more than forty years old when he was fired. Mr. Kocsis thus has clearly demonstrated the first and third elements of the prima facie claim. There is also substantial evidence that Mr. Kocsis performed his job satisfactorily for more than 20 years, other than the alleged theft (see Delta CSF Ex. J; Takao Decl. ¶ 7), and Delta has presented no argument on this element of the claim.

Delta's Motion focuses on the fourth element of the prima facie claim; Delta argues that Mr. Kocsis has not met his burden because he has presented no evidence that would be admissible at trial showing that he was fired under circumstances "giving rise to an inference of age discrimination." Sheppard, 694 F.3d at 1049. An inference of discrimination may be established by showing that other, younger employees were treated

more favorably than the plaintiff. <u>O'Connor v. Consol. Coin Caterers Corp.</u>, 517 U.S. 308, 312 (1996).

Here, Mr. Kocsis's basis for inferring that Delta fired him because of his age is a conversation he had with a Delta Purser, Muriel Baker, who told him that she had repeatedly reported a certain flight attendant, Henry Kashfi, for stealing duty-free deposits, but that Mr. Kashfi was not fired or disciplined. Mr. Kocsis believes based on workplace gossip that many people at Delta knew that Mr. Kashfi routinely stole duty-free deposits. Mr. Kocsis believes that Mr. Kashfi is eleven years younger than Mr. Kocsis.

First, Delta argues that Mr. Kocsis's allegations regarding Henry Kashfi are simply irrelevant because Mr. Kashfi had different supervisors from Mr. Kocsis. (Reply at 8.) Delta is incorrect. The Ninth Circuit does not apply a rigid "same supervisor" requirement in determining whether employees are similarly situated; employees who had different supervisors but who were subject to the same rules and standards may be similarly situated. <u>Earl v. Nielsen Media Research, Inc.</u>, 658 F.3d 1108, 1115 (9th Cir. 2011); <u>see</u> <u>Hawn v. Executive Jet Mgmt., Inc.</u>, 615 F.3d 1151, 1157 (9th Cir. 2010) (In a Title VII case, "[i]t was error for the district court to impose a strict 'same supervisor' requirement. . . . The employees' roles need not be identical; they must only be similar 'in all material respects.'" (citations omitted)).

Second, Delta argues that all of the evidence Mr. Kocsis has presented concerning Mr. Kashfi is hearsay. The Court agrees in part and disagrees in part.

Federal Rule of Evidence 801(d)(2)(D) states that a statement is not hearsay if it "is offered against an opposing party" and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." The burdens is on the party offering the statement to establish each of these foundational facts. United States v. Chang, 207 F.3d 1169, 1176 (9th Cir. 2000).

To show these "foundational facts," i.e., that Ms. Baker was employed by Delta when she spoke to Mr. Kocsis and that the scope of her employment encompassed the things she told him, Mr. Kocsis has offered his own testimony and Ms. Baker's statements themselves. It is not clear whether Mr. Kocsis's testimony on this subject was made with personal knowledge. The Ninth Circuit has held, however, that "out of court statements may themselves be considered in determining the preliminary question, under Rule 801(d)(2)(D) of the scope of [the agent's] employment duties." Hilao v. Est. of Marcos, 103 F.3d 767, 775 (9th Cir. 1996). Moreover, Delta has not denied that Ms. Baker is a Delta Purser and was one at the time she made these statements. Under the circumstances, the Court finds that Mr. Kocsis has - barely - raised an issue of material fact as to these foundational facts.

Ms. Baker's statements that she caught Mr. Kashfi stealing duty-free payments, filed three complaints about it to Delta, discussed the issue with Delta's security officer, and observed that Mr. Kashfi was not fired, are all arguably matters within the scope of her employment as a Purser, which, as Delta itself acknowledges, involves supervising other flight attendants and collecting duty-free payments from them (see Delta CSF ¶¶ 5-8, 10). They are, therefore, arguably not hearsay.

On the other hand, Mr. Kocsis's understanding from conversations with New York-based flight attendants that it was "common knowledge" that Mr. Kashfi had been stealing "for years" does not, based on the evidence currently before the Court, fall into the same exception. Such a broad observation about Mr. Kashfi's work performance over a long period of time does not appear to fall within the scope of a single flight attendant's employment duties. Similarly, Ms. Baker's statement that Mr. Kashfi "went unpunished" appears to be outside the scope of her employment; Mr. Kocsis has presented no evidence that Pursers in general or Ms. Baker in particular have any role in disciplinary decisions. These statements are pure hearsay.[7]

---

[7] Hearsay evidence may be considered at the summary judgment stage if its contents would be admissible at trial. Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003). For example, a court may consider at the summary judgment stage statements made in a diary, if the diary-writer has personal knowledge of the facts alleged in the statement and could properly testify to them at trial. Id. at 1036-37. Here, however, Mr. Kocsis's deposition testimony and statements in his declaration regarding Mr. Kashfi would not be admissible at trial, because, as Mr. Kocsis himself testified, Mr. Kocsis has

(continued...)

Mr. Kocsis has also presented no evidence that would be admissible at trial as to Mr. Kashfi's age. Mr. Kocsis testified at deposition that he learned that Mr. Kashfi was eleven years younger than him from the website Facebook.[8/] This is, again, hearsay. Thus, Mr. Kocsis has presented no admissible evidence that the similarly-situated employee with whom he should be compared is significantly younger than him.

Since Mr. Kocsis has not presented sufficient admissible evidence to support the fourth element of his claim, the Court would ordinarily grant summary judgment on this claim to Delta. In this case, however, Mr. Kocsis has requested under Rule 56(d) that the Court allow him to conduct further discovery before ruling on the motion for summary judgment. Since Mr. Kocsis requests further discovery as to all of his claims, the Court will first address the merits of his other claims and then discuss his Rule 56(d) request.

---

[7/] (...continued)
no direct personal knowledge whatsoever of any of the facts he reports concerning Mr. Kashfi. (See Kocsis Dep. at 282:24-283:16.)

[8/] Delta makes much of the fact that if Mr. Kashfi is indeed eleven years younger than Mr. Kocsis, he would have been over forty at the time Mr. Kocsis was fired. The Supreme Court has noted, however, that in age discrimination cases the proper inquiry is not whether the comparator employee is outside the protected class, but whether he is significantly younger than the plaintiff. See O'Connor, 517 U.S. at 312; Earl, 658 F.3d at 1116 (refuting employer's argument that an employee who was 42 when he committed policy violations could not be a proper comparator: "In an age discrimination case, comparison with younger employees within the protected class is not improper as a matter of law . . . .")

**B.**   **Disparate Impact**

A disparate impact claim challenges "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." Pottenger v. Potlatch Corp., 329 F.3d 740, 749 (9th Cir. 2003) (quoting Int'l Bd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977)).

To establish a prima facie case of age discrimination on the basis of disparate impact, the plaintiff must produce evidence showing: (1) the occurrence of certain outwardly neutral employment practices and (2) a significantly adverse or disproportionate impact on persons of a particular age produced by the employer's facially neutral acts or practices. Id. (citation omitted). The plaintiff need not show discriminatory motive or intent. Rose, 902 F.2d at 1421.

A disparate impact claim "must challenge a specific business practice." Pottenger, 329 F.3d at 749. The Supreme Court has explained: "[I]t is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." Smith v. City of Jackson, 544 U.S. 228, 242 (2005) (affirming grant of summary judgment). Moreover, the plaintiff must show that he was subject to the particular employment

19

practice with the alleged disparate impact. <u>Pottenger</u>, 329 F.3d at 750.

Here, Mr. Kocsis has not identified any specific, facially neutral employment practice on which his claim is based. Nor has he demonstrated that any of Delta's policies had a disproportionate impact on older employees in general. Indeed, although he repeatedly claims that Delta had an "internal, unpublished policy of discriminating against older, senior flight attendants," (Opp. at 1), Mr. Kocsis has presented no evidence of any other employee over 40 who was discharged or adversely treated by Delta.

### C. Retaliation

Delta in its motion presented arguments regarding an ADEA retaliation claim. Mr. Kocsis's complaint does not appear to bring a retaliation claim, however, his opposition does not mention one, and he did not present any arguments concerning retaliation at the hearing on Delta's Motion. The Court therefore disregards these arguments.

### II. State Law Claims Under Hawaii Revised Statues § 378-2

In addition to his federal claims, Mr. Kocsis brings state-law claims under Hawai'i Revised Statute § 378-2. That statute makes it "an unlawful discriminatory practice" for an employer to fire or otherwise discriminate against an employee "because of . . . age." Haw. Rev. Stat. § 378-2(a)-(a)(1)(A). Unlike the ADEA, the Hawaii state statute does not establish a specific age group which it protects. <u>Schefke v. Reliable</u>

<u>Collection Agency, Ltd.</u>, 32 P.3d 52 n.63 (Haw. 2001). The import of the Hawai'i statute is, however, identical to that of the ADEA, and the Hawaii Supreme Court has "looked to the interpretations of analogous federal laws by the federal courts for guidance." <u>Shoppe v. Gucci Am., Inc.</u>, 14 P.3d 1049, 1058 (Haw. 2000). Thus, to evaluate state-law age discrimination claims under section 378-2, Hawaii courts follow the same <u>McDonnell Douglas</u> burden-shifting framework used for federal ADEA claims. <u>E.g.</u>, <u>French v. Haw. Pizza Hut, Inc.</u>, 99 P.3d 1046, 1057 (Haw. 2004).

There are three types of age discrimination claim under Hawaii law: disparate treatment discrimination, pattern-or-practice discrimination, and disparate impact discrimination.

### A.   Disparate Treatment

The elements of a prima facie state-law claim for age discrimination based on disparate treatment are different from those of its federal analog. To establish a prima facie claim of age discrimination under Hawaii state law, a plaintiff must present evidence that: (1) he is a member of the protected class; (2) he is qualified for the position in question; (3) he has suffered some adverse employment action; and (4) the position in question still exists. <u>Shoppe</u>, 14 P.3d at 1059; <u>see also</u> <u>Reyes v. HMA, Inc.</u>, Civ. No. 07-00229, 2008 WL 1883904, at *4-*5 (D. Haw. Apr. 28, 2008) (discussing some of the inconsistencies between <u>Shoppe</u> and the federal law it claims to apply and following <u>Shoppe</u>'s statement of the prima facie elements).

Here, none of the elements of the state-law prima facie claim appear to be in dispute. Mr. Kocsis was over forty years old, was qualified for the position, and was fired. Delta apparently still employs Pursers on its flights. Under the framework laid out in <u>Shoppe</u>, Mr. Kocsis has presented a prima facie claim, and the burden of production therefore now shifts to Delta to articulate a legitimate, nondiscriminatory reason for firing Mr. Kocsis. <u>Shoppe</u>, 14 P3d at 1059.

Delta presents competent evidence that it fired Mr. Kocsis because it believed that MDEs for which he was responsible went missing. (<u>See, e.g.</u>, Delta CSF Ex. J (termination recommendation); Bell Decl. ¶¶ 55-56; Takao Decl. ¶¶ 32-34.) Suspicion of theft is clearly a legitimate, non-discriminatory reason to fire an employee. The burden of production therefore shifts back to Mr. Kocsis to present evidence that Delta's alleged reasons for firing him were pretextual. <u>Shoppe</u>, 14 P.3d at 1059.

Under Hawaii law, a plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." <u>Hac. v. Univ. of Haw.</u>, 73 P.3d 46, 54 n.15 (Haw. 2003) (quoting <u>Shoppe</u>, 14 P.3d at 1060).

Here, as discussed above in relation to Mr. Kocsis's federal claims, Mr. Kocsis has presented no direct evidence that the decisionmakers at Delta held any discriminatory motivations.

He has presented admissible evidence that a Purser complained about Mr. Kashfi stealing duty-free payments and that Mr. Kashfi was not fired, but has failed to present admissible evidence that Mr. Kashfi was significantly younger than Mr. Kocsis.

The Court therefore examines whether Mr. Kocsis has presented any other evidence to show that Delta's proffered explanation for firing him is otherwise "unworthy of credence." Id. To prevail on this theory, the plaintiff must produce sufficient evidence to show that there is a genuine issue of material fact regarding the truth of the employer's stated reason for firing him. See Chuang v. Bd. of Trs., 225 F.3d 1115, 1127 (9th Cir. 2000) (discussing the meaning of the phrase "unworthy of credence").[9/] The burden of persuasion that the employer intentionally discriminated against the plaintiff remains with the plaintiff. Shoppe, 14 P.3d at 1059-60.

On this issue, Delta presents declarations from Ms. Bell and Mr. Takao, the two supervisors who decided to fire Mr. Kocsis, stating that they both honestly believed at the time

---

[9/] There is no doubt that Mr. Kocsis has presented evidence which would raise a genuine question of fact as to whether he actually did deposit the three January 2011 MDEs that allegedly went missing. The Court notes for Mr. Kocsis's benefit, however, that in an employment discrimination case the truth of the underlying allegations against the plaintiff are irrelevant, as long as his employers actually believed them at the time that they discharged him. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir. 2002) ("In judging whether [the employer's] proffered justifications were 'false,' it is not important whether they were objectively false . . . . Rather, courts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." (citation omitted)).

they fired him that Mr. Kocsis had not deposited the missing MDEs as he had claimed. (See Bell Decl. ¶ 55; Takao Decl. ¶ 32.) Mr. Kocsis's arguments rebutting this evidence fall into three categories.

First, Mr. Kocsis argues that he repeatedly tried to present receipts which would account for the three missing MDEs. Ms. Bell states in her declaration that she personally investigated the missing MDEs, that the MDEs were never recovered, and that based on her investigation, she believed Mr. Kocsis had stolen them. Ms. Bell's declaration carefully details her investigation, which included two exchanges with Ms. Bunch, the Honolulu employee with whom Mr. Kocsis claimed to have deposited the missing MDEs. Furthermore, Ms. Bell investigated the signed receipt for MDE # 462209 which Mr. Kocsis presented during his appeal process, but found that MDE # 462209 did not contain the missing money from MDE # 462455.

Ms. Bell's declaration regarding her investigation of the signed receipt is inconsistent with the documentary evidence, however. Ms. Bell states that Mr. Kocsis only claimed that he had given MDE # 462209 to Ms. Bunch in Honolulu "for the first time" after he was fired, and therefore describes his presentation of the signed receipt and explanation that MDE # 462455 was contained within MDE # 462209 as a "new claim." (Bell Decl. ¶¶ 59, 62.) The documentary evidence clearly shows, however, that Mr. Kocsis offered to show his managers his receipts well before he was terminated. In an email dated February 17, 2011, addressed

24

to Mr. Takao and forwarded to Ms. Bell, Mr. Kocsis stated that he had deposited all his January MDEs at either Narita or Honolulu and had obtained receipts. (Delta CSF Ex. I (email dated February 17, 2011: "All my deposits . . . for the month of January 2011 have been deposited in either the deposit safe in NRT or directly at in-flight in HNL. I will provide you with my copy of the receipts upon my return.").) And in an email to Ms. Bell dated March 22, 2011, Mr. Kocsis listed all of his January deposits; the list includes the three MDEs that were allegedly missing and notes that he had deposited them with in-flight services at Honolulu and received signed receipts for them. (Id.) His list also notes that he had deposited MDE # 462455 within another MDE. (Id.) In sum, this was not a "new claim" and Mr. Kocsis did not present his receipts for the first time only after he was fired.

Moreover, Mr. Kocsis states in his declaration that when he was first suspended he asked Mr. Takao for the chance to explain the allegedly missing deposits and was denied, and that during the meeting in which he was fired he again told Ms. Bell and Mr. Takao that he had signed receipts for the allegedly missing MDEs, but was not allowed to present them. (Kocsis Decl. ¶¶ 7, 8.) Mr. Kocsis also presents evidence that this refusal was inconsistent with his manager's past practice; when Delta previously questioned the whereabouts of two other MDEs which he

had deposited late,[10/] he was allowed to present his signed receipts. (Kocsis Decl. ¶ 3; see Opp. at 6-7.)

Second, Mr. Kocsis argues that Delta has not shown that the missing money was never recovered because it has not produced documents to substantiate that factual claim. Mr. Kocsis is incorrect. Ms. Bell's sworn affidavit states that the money was never recovered, and Mr. Kocsis has presented no evidence that would call that particular statement into question.

Third and finally, Mr. Kocsis argues that Ms. Bell and Mr. Takao fired him because they were afraid of repercussions from Delta's head office if they did not take the opportunity to fire an older member of their workforce. Mr. Kocsis states that Mr. Takao told him while suspending him that the decision to suspend Mr. Kocsis was not his, and that Mr. Takao himself would have conducted a more thorough investigation and allowed Mr. Kocsis the chance to explain himself. (Kocsis Decl. ¶ 7.) Mr. Kocsis also states that Mr. Takao told Mr. Kocsis that he and Ms. Bell had previously made Delta's management angry by failing to fire Kevin Griffin, another, similarly-aged Purser who had been alleged to have been stealing. (Id.)

---

[10/] Mr. Kocsis explains the background to this incident - namely that he was late depositing these MDEs because he had been called away from work to see his terminally-ill mother – in his Opposition, but does not do so in his Declaration. The Court reminds Mr. Kocsis that unsworn factual statements made in a brief are not evidence; if Mr. Kocsis wishes the Court to consider one of his factual statements as evidence, he must include it in a declaration signed under penalty of perjury.

In its Reply, Delta argued that the Court should disregard Mr. Kocsis's evidence concerning Mr. Griffin on the grounds that Mr. Kocsis was making these allegations "for the first time" and that they conflicted with his deposition testimony. (Reply at 3-4 ("Plaintiff's failure to raise Mr. Griffin as a comparator until now is disingenuous and cannot be considered for purposes of defeating summary judgment.").) Delta's counsel conceded at the motion hearing, however, that Mr. Kocsis had in fact discussed Mr. Griffin during his deposition.

Like Ms. Baker's statements discussed above, Mr. Takao's statements concerning Mr. Griffin are at least arguably admissible against Delta under Federal Rule of Evidence 801(d)(2)(D), as statements of a party-opponent. Mr. Kocsis's declaration and arguments are not at all clear, however, as to what Mr. Takao actually said, versus what Mr. Kocsis inferred from his statements. Most importantly, it is not clear whether Mr. Takao actually said anything to imply that Delta was angry because Mr. Griffin was an older employee, rather than, as Delta's counsel argues, because Delta "is committed to a theft-free environment." (Reply at 4.)

### B.   Pattern-or-Practice & Disparate Impact

When bringing a state-law employment discrimination claim under a "pattern-or-practice" theory, "a plaintiff must prove, by circumstantial or direct evidence, that an employer's past actions evidence a pattern of illegal discrimination against

27

a protected class." <u>Shoppe</u>, 14 P.3d at n.2 (citations omitted).
Under a "disparate impact" theory, "a plaintiff must prove
statistically that a certain employment practice has a disparate
impact on a protected class." <u>Id.</u> at n.3. Here, as discussed
above, Mr. Kocsis has presented no evidence regarding adverse
employment actions taken against any other Delta employee, much
less any employee who could also fall within the protected class
for an age discrimination claim.

**III.  Request for Further Discovery**

        For the reasons stated above, the Court would
ordinarily grant summary judgment to Delta on, at least,
Mr. Kocsis's federal claims and his state law claims on a theory
of disparate impact or "pattern-or-practice." In this case,
however, Mr. Kocsis requests more time for discovery so that he
may seek further evidence to oppose Delta's motion. (Kocsis Decl.
¶¶ 12-13.) Under Federal Rule of Civil Procedure 56(d)[11/], a
district court may postpone ruling on a summary judgment motion
to allow for further discovery where the non-moving party needs
"additional discovery to explore facts essential to justify the
party's opposition." <u>Jones v. Blanas</u>, 393 F.3d 918, 930 (9th Cir.
2004). The Ninth Circuit has noted that although Rule 56(d) on
its face gives district courts "the discretion to disallow
discovery where the non-moving party cannot yet submit evidence
supporting its opposition, the Supreme Court has restated the

---

        [11/] Former Rule 56(f) became Rule 56(d) under the 2010
amendments to the Rules.

rule as <u>requiring</u>, rather than merely permitting, discovery 'where the nonmoving party has not had the opportunity to discover information that is essential to its opposition.'" <u>Metabolife Int'l, Inc. v. Wornick</u>, 264 F.3d 832, 846 (9th Cir. 2001) (emphasis added) (quoting <u>Anderson</u>, 477 U.S. at 250 n.5).

### A.   Form of Request

Ordinarily, a Rule 56(d) request must be made in a separate motion or formal request. <u>See, e.g.</u>, <u>Brae Transp., Inc. v. Coopers & Lybrand</u>, 790 F.2d 1439, 1443 (9th Cir. 1986). "References in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56[(d)]." <u>Lane v. Dep't of Interior</u>, 523 F.3d 1128, 1134 n.4 (9th Cir. 2008). The Ninth Circuit has, however, allowed certain filings not formally denominated as Rule 56(d) requests to adequately raise the issue of additional discovery. <u>Id.</u> (citing <u>Garrett v. City & Cnty. of S.F.</u>, 818 F.2d 1515, 1518 (9th Cir. 1987)). Here, Mr. Kocsis is appearing pro se, and the Court will construe paragraphs 12 and 13 of Mr. Kocsis's affidavit attached to his opposition as a Rule 56(d) request for further discovery.

### B.   Merits of Request

To obtain a continuance under Rule 56(d), the party opposing a motion for summary judgment must make "(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." <u>Blough v. Holland Realty,</u>

29

<u>Inc</u>, 574 F.3d 1084, 1091 n.5 (9th Cir. 2009) (citation omitted).
The Court will address each of these elements in turn.

### 1. Timeliness

Mr. Kocsis filed his request within the time allowed by
the Federal Rule of Civil Procedure and the Local Rules for an
opposition to a motion for summary judgment. The Court finds that
Mr. Kocsis's request was timely. <u>See</u> <u>Ashton-Tate Corp. v. Ross</u>,
916 F.2d 516, 519-20 (9th Cir. 1990) (request timely if made
prior to the summary judgment hearing).

### 2. Specifically Identifies

When requesting further discovery under Rule 56(d),
"[i]t is not enough to rely on vague assertions that discovery
will produce needed, but unspecified, facts." <u>Naoko Ohno v. Yuko</u>
<u>Yasuma</u>, ___ F.3d ___ , 2013 WL 3306351, at *23 n.29 (9th Cir.
July 2, 2013) (quoting <u>Stearns Airport Equip. Co. v. FMC Corp.</u>,
170 F.3d 518, 535 (5th Cir. 1999)).

Here, Mr. Kocsis's request for further discovery
indicates that he may seek further, unspecified, documentary
evidence and interrogatory responses from Delta, and may wish to
depose Muriel Baker, John O'Dwyer, and Junichi Takao.
Mr. Kocsis's request does not identify any specific facts or
documents that he intends to obtain through this discovery. He
states merely that he "believes that further discovery will
provide further sufficient evidence to deny" Delta's summary
judgment motion. (Kocsis Decl. ¶ 13.) This exceptionally vague
statement does not meet the standard required of Rule 56(d)

30

requests. Construing the statement generously, as befits Mr. Kocsis's pro se status, however, the Court can infer from Mr. Kocsis's other allegations and arguments that he wishes to question Muriel Baker and John O'Dwyer about Henry Kashfi's dismissal, and Junichi Takao about his statement that he and Ms. Bell were afraid of repercussions from Delta's head office if they did not fire Mr. Kocsis. The Court may also infer that Mr. Kocsis wishes to obtain documentary evidence on these same topics, as well as on the thoroughness of Ms. Bell's investigation.

### 3.   Relevant Facts

The evidence sought by a Rule 56(d) request must be relevant to the movant's opposition – that is, the moving party must show that the evidence sought "would prevent summary judgment." Getz v. Boeing Co., 654 F.3d 852, 868 (9th Cir. 2011) (citation omitted). Since Mr. Kocsis has not specified what evidence he seeks to discover, the Court must rely on its own inferences, which are discussed above. Testimony obtained from Muriel Baker and John O'Dwyer and related documentary evidence concerning Mr. Kashfi would be relevant to Mr. Kocsis's opposition. A deposition of Mr. Takao about his reasons for firing Mr. Kocsis  - and particularly about his statements concerning Mr. Griffin - and documents concerning Ms. Bell's investigation could yield evidence relevant to Mr. Kocsis's arguments concerning pretext.

### 4.    Existing Facts

"[D]enial of a Rule 56[(d)] application is proper where it is clear that the evidence sought is almost certainly nonexistent or is the object of pure speculation." Campbell, 138 F.3d at 779-80. There is no reason to infer that any of the evidence discussed above does not exist.

### 5.    Diligence in Discovery

Finally, the district court may deny further discovery if the requesting party failed to pursue discovery diligently in the past. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 921 (9th Cir. 1997); see, e.g., Trans-Tec Asia v. M/V Harmony Container, 518 F.3d 1120, 1133 (9th Cir. 2008). As noted above, the Supreme Court has interpreted Rule 56(d) as requiring the court to allow further discovery where the requesting party "has not had the opportunity to discover information" essential to its opposition. Metabolife, 264 F.3d at 846 (emphasis added) (quoting Anderson, 477 U.S. at 250 n.5).

This action has been pending since July 27, 2012. There is no evidence that Mr. Kocsis has attempted during the last year to take the deposition of any of the three witnesses he now claims he wishes to depose. Mr. Kocsis also complains that one of Delta's discovery responses was inadequate, but the response was served more than three months ago, and Mr. Kocsis did not file a motion to compel or otherwise raise the issue with this Court until now. (See Reply, Hara Decl. ¶¶ 3-4, 11.)  In sum,

Mr. Kocsis's pursuit of discovery cannot fairly be characterized as diligent.

### C.   Conclusion as to Rule 56(d) Request

Mr. Kocsis's proposed further discovery does not seek evidence that would support claims based on disparate impact or "pattern-or-practice." The Court grants summary judgment to Delta on any such claims.

Mr. Kocsis's proposed further discovery does, however, seek evidence relevant to his claims based on a theory of disparate treatment. Given that Mr. Kocsis has not pursued discovery diligently and has failed to set out what further facts he seeks with any specificity, the Court is reluctant to grant his Rule 56(d) request. In consideration of his pro se status, however, the Court will grant the request. Delta's Motion for Summary Judgment is therefore deemed withdrawn as to these claims, and the parties shall proceed with relevant discovery as set forth below.

### CONCLUSION

For the foregoing reasons, the Court GRANTS summary judgment to Delta on Mr. Kocsis's federal and state law claims based on theories of disparate impact or "pattern-or-practice." The Court also, however, GRANTS Mr. Kocsis's request for further discovery, as to his federal and state law claims based on a theory of disparate treatment. Delta's Motion for Summary Judgment is DEEMED WITHDRAWN as regards these claims. The parties shall continue to engage in discovery until the discovery

33

deadline of September 13, 2013.[12/] After September 13, 2013, but by, at the latest, September 27, 2013, Delta may file a renewed motion for summary judgment if it so wishes. The Court will set the schedule for any further briefing at that time.

        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii, August 5, 2013



                        _____
                        Alan C. Kay
                        Sr. United States District Judge


<u>Kocsis v. Delta Air Lines, Inc.</u>, Civ. No. 12-00423 ACK BMK, Order Granting in Part Defendant's Motion for Summary Judgment and Granting Plaintiff's Rule 56(d) Request for Further Discovery

--------

    [12/] The discovery deadline is less than six weeks away. The Court therefore notes for Mr. Kocsis's benefit as a pro se that it is possible to ask the Court to extend such deadlines - but "<u>only for good cause</u>." Fed. R. Civ. P. 16(b)(4) (emphasis added). The Court reminds Mr. Kocsis – as the Court discussed with him at the hearing - that he must pursue discovery <u>diligently</u>. His failure to do so will not constitute "good cause" for extending the deadline.